[Crim. No. 6684. Third Dist. Jan. 9, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
JEFFREY P. GAULDEN, Defendant and Appellant.

948

COUNSEL

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, James T. McNally and Gregory W. Baugher, Deputy Attorneys General, for Plaintiff and Respondent.

James Larson, under appointment by the Court of Appeal, and Brian Glick for Defendant and Appellant.

## OPINION

**REGAN, J.**—In an indictment filed in the County of Sacramento, defendant was charged with the crime of murder. The jury found defendant guilty of murder in the first degree. He appeals from the judgment of conviction.

On August 30, 1971, a Mr. Randle was hired by Folsom Prison as a laundry supervisor. After a week of orientation, he began his duties in the laundry and was working there on September 16, 1971. Another "free man," a Mr. Turner, was also working in the laundry on that date. Defendant, an inmate at Folsom, was assigned to the pressing room and worked there on September 16, 1971.

At about 12:20 p.m. on September 16, a laundry truck came to the back of the laundry area and Turner went there to supervise the unloading. Randle remained at the front door of the laundry room checking out inmates from the laundry area. As he was checking out the inmates, another inmate, whom Randle was unable to identify, came by and said there was a disturbance in the back of the laundry room. Randle detected a note of urgency in the inmate's voice.

Randle immediately proceeded to the back of the laundry. Enroute he heard a series of screams and thought they were emanating from the sock room. As he entered the door to the sock room he noticed Turner lying on the floor. An inmate was bending over Turner, straddling his prone body, and withdrawing his hand from the area of Turner's chest. Randle observed blood on the front of Turner's chest. He saw no one else in the area.

Randle came to an immediate halt just a few feet inside the door to the sock room. The inmate straddling Turner looked up at Randle who was able to identify him as the defendant. Randle had participated in a discussion earlier that day between Turner and the defendant relating to the defendant's attempt to obtain a job as a clerk for Randle. At that time Turner had explained to defendant that Randle already had a clerk.

When defendant saw Randle, he got up and began to approach him. Randle noticed that defendant was carrying in his hand a dull instrument which appeared to be between seven and ten inches long and had a dull, red color. Randle became frightened and ran out of the laundry room into the yard to summon help.

Randle ran to the yard shack and spoke with two correctional officers and told them what had happened. As they were talking, Turner staggered around the side of the laundry building and collapsed. A guard stationed

in a nearby guard tower thought he saw Turner stagger from the laundry followed by an inmate. Prison personnel attempted to assist Turner, and he was carried to the hospital where he subsequently died. During this time Turner said nothing more than "help me."

An associate warden, Randle and several officers secured a key to the laundry room (which had automatically locked) and gained entrance to the building. At this point Randle identified defendant as Turner's assailant.

When the officers entered the laundry, the defendant was not among the inmates remaining there. No weapons were found in the room during the subsequent search. There was a trail of blood leading from the sock room to the truck docking area.

While the search of the building was being conducted, Sergeant Cox was outside searching the inmates prior to their being returned to their cells. Cox had been advised that defendant was responsible for the stabbing incident. While conducting the search, Cox noticed defendant come around the corner of the bleacher area in the recreation yard, and move into a line of inmates. Defendant was then removed from the line and taken to the custody office. Sergeant Cox noticed what appeared to be blood stains on defendant's pants and socks.

During the afternoon of September 16, another search was made of the laundry area where an officer discovered a wadded up shirt in the sheet bin. In the pocket of the shirt was a medical slip with defendant's name on it. Defendant's laundry number was stamped on the front of the shirt, and the officer observed what appeared to be blood on one of the sleeves.

A search of the grounds revealed a knife located on a ledge above the showers near the weight lifting area of the yard. There appeared to be stains on the blade portion.

Blood stains found on defendant's clothing and on the blade of the knife were compared with that of the deceased and were found to be of the same blood type.

The cause of death was determined to be a stab wound to the left lung. However, there were multiple other wounds.

The defense called only one witness, a tower guard. He testified he saw an unidentified inmate come out from the laundry area behind Turner with his hand stretching out. Defense counsel asked the officer if it appeared the inmate was helping Turner, but the prosecutor's objection to this question on the ground that it called for a conclusion was sustained.

■ Defendant contends the trial court erred in failing to instruct, *sua sponte,* on the lesser included offense of manslaughter. (See *People* v. *Hood* (1969) 1 Cal.3d 444, 449 [82 Cal.Rptr. 618, 462 P.2d 370].)

■ It is reversible error to refuse a manslaughter instruction in a case where murder is charged and the evidence would warrant a conviction of manslaughter. (*People* v. *Carmen* (1951) 36 Cal.2d 768, 773-774 [228 P.2d 281].) ■ It is also well established that it is the duty of the trial court to instruct the jury on general principles of the law relevant to the issues raised by the evidence even though not requested to do so. (*People* v. *Noah* (1971) 5 Cal.3d 469, 478 [96 Cal.Rptr. 441, 487 P.2d 1009].) The defendant has a constitutional right to have the jury determine every material issue presented by the evidence. (*People* v. *Modesto* (1963) 59 Cal.2d 722, 730-731 [31 Cal.Rptr. 225, 382 P.2d 33].)

To paraphrase *Carmen,* the issue presented by defendant's contention is whether there is any evidence *deserving of any consideration whatever* which might tend to prove manslaughter and not murder as charged, and thus would have required an instruction on manslaughter. (*People* v. *Carmen, supra,* 36 Cal.2d at p. 773.)

The decisive distinction between murder and manslaughter is the presence of malice aforethought. (Pen. Code, §§ 187, subd. (a), and 192.) ■ A trial court need not instruct on manslaughter where the evidence indicates a no lesser crime than murder in the first degree. (*People* v. *Duren* (1973) 9 Cal.3d 218, 236-237 [107 Cal.Rptr. 157, 507 P.2d 1365].) *People* v. *Williams* (1969) 71 Cal.2d 614, 624 [79 Cal.Rptr. 65, 456 P.2d 633] is apropos; "there is no direct or circumstantial evidence to support an inference that Kretchman unlawfully provoked defendant. The defendant chose not to testify and provide direct evidence. Adequate provocation as an element of voluntary manslaughter must be affirmatively demonstrated; *it cannot be left to speculation.* Under these circumstances the voluntary manslaughter instruction was properly refused." (Italics added.)

■ In this connection, the defendant contends on this appeal that there was a violent quarrel between defendant and Turner prior to the actual slaying. He claims that provocation for the ensuing fight resulted from Turner's refusal to grant defendant's request to be a laundry clerk for Randle. He also points out the multiple wounds on Turner as indicating circumstantial evidence of a preliminary heated quarrel, thus negating malice.

Such argument is a flight into fantasyland, or as Justice Peters stated in *Williams, supra,* "speculation." (71 Cal.2d at p. 624.) There is nothing

in the record to support any showing of a lengthy struggle, or more importantly any evidence of provocation upon the part of Turner, prior to the time Randle went to the sock room and observed defendant withdrawing a knife from the prone body of Turner. The number of wounds inflicted upon Turner's body, if anything, constitute circumstantial evidence of malice upon defendant's part. (See *People* v. *Brawley* (1969) 1 Cal.3d 277, 295 [82 Cal.Rptr. 161, 461 P.2d 361].) Furthermore, defendant suffered no wounds and was not assigned to the sock room. And the rhetorical question arises as to why defendant was armed with a knife. Turner's rejection of defendant as a laundry clerk for Randle may explain the killing, but it hardly established that Turner taunted defendant to a point where defendant killed him in a sudden "heat of passion." (See Pen. Code, § 192.) Defendant's contention is sheer conjecture. (*People* v. *Williams, supra;* see *People* v. *Morse* (1969) 70 Cal.2d 711, 736 [76 Cal. Rptr. 391, 452 P.2d 607].)

■ Defendant contends his conviction must be reversed because he was denied the effective assistance of counsel at trial.

The general principles relating to adequacy of defense counsel are well known. In *People* v. *Reeves* (1966) 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35], the court states: "To justify relief on the ground of constitutionally inadequate representation of counsel, ' "an extreme case must be disclosed" [Citations.] It must appear that counsel's lack of diligence or competence reduced the trial to a "farce or a sham." [Citations.]' (*People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) Defendant has the burden, moreover, of establishing his allegation of inadequate representation 'not as a matter of speculation but as a demonstrable reality.' (*Adams* v. *United States* ex rel. *McCann* (1942) 317 U.S. 269, 281 [63 S.Ct. 236, 87 L.Ed. 268, 143 A.L.R. 435]; accord, *People* v. *Robillard* (1960) *supra,* 55 Cal.2d 88, 97 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086].)" There must be some showing of an unawareness of a rule of law basic to the case that reasonable preparation would have revealed (*People* v. *Ibarra* (1963) 60 Cal.2d 460, 466 [34 Cal.Rptr. 863, 386 P.2d 487]) or some showing that lack of careful inquiry resulted in the withdrawing of a crucial defense from the case. (*In re Saunders* (1970) 2 Cal.3d 1033, 1041-1042 [88 Cal.Rptr. 633, 472 P.2d 921]; cf. *People* v. *Miller* (1972) 7 Cal.3d 562, 569-574 [102 Cal.Rptr. 841, 498 P.2d 1089].) Furthermore, this is in an area of trial tactics as to which the appellate courts will not ordinarily exercise judicial hindsight. (*People* v. *Beagle* (1972) 6 Cal.3d 441, 458 [99 Cal.Rptr. 313, 492 P.2d 1].) Nor is it sufficient to allege merely that the attorney's tactics were poor, or

that the case might have been handled more effectively. (*People* v. *Floyd* (1970) 1 Cal.3d 694, 709 [83 Cal.Rptr. 608, 464 P.2d 64].)

Attached to defendant's opening brief is a declaration of defendant's trial counsel made under penalty of perjury. In that declaration he states that although defendant asked him to contact another inmate who would testify defendant was elsewhere at the time of the killing, counsel failed to contact this inmate. Defense counsel declares that under the pressures of time he neglected to investigate the matter. Defendant contends this declaration supports his contention.

The affidavit alluded to is not properly before this court on defendant's appeal. (*In re Hochberg* (1970) 2 Cal.3d 870, 875 [87 Cal.Rptr. 681, 471 P.2d 1]; *People* v. *Merriam* (1967) 66 Cal.2d 390, 396-397 [58 Cal.Rptr. 1, 426 P.2d 161]; Cal. Rules of Court, rule 33). As the court stated in *People* v. *Beagle, supra,* 6 Cal.3d at p. 457: "Self-proclaimed inadequacies on the part of trial counsel in aid of a client on appeal are not persuasive." (See also *People* v. *Saidi-Tabatabai* (1970) 7 Cal.App.3d 981, 988-989 [86 Cal.Rptr. 866].) Finally, and again assuming that the affidavit is properly before us, there is still no merit to the contention. Our review of the record indicates that defense counsel, through vigorous cross-examination, attempted to create a reasonable doubt that defendant was the person actually responsible for the killing of Turner. Yet he was faced with the testimony of Randle who had a face-to-face confrontation with defendant when he withdrew the knife from Turner's body and then approached Randle. Earlier that day Randle had met with defendant. It is highly conjectural that the so-called "missing witness" could have added anything to defendant's case. (See *People* v. *Murphy* (1972) 8 Cal.3d 349, 367 [105 Cal. Rptr. 138, 503 P.2d 594].) In any event, we find no incompetency of counsel in the constitutional sense. (Cf. *People* v. *Hill* (1969) 70 Cal.2d 678, 690 [76 Cal.Rptr. 225, 452 P.2d 329].)

██ As a second prong of this contention, defendant contends that trial counsel made serious mistakes based on ignorance of the law.

These bare assertions (all of which are discussed *infra* in greater detail) have no support in the record and defendant declines to support his arguments by appropriate references to the record. The facts of this case clearly show a man caught in the act of slaying a prison official. As previously explained, defendant's theories as to provocation, heat of passion, etc., are mere conjecture not supported by the record. (See *People* v. *Moles* (1970) 10 Cal.App.3d 611, 618 [89 Cal.Rptr. 226].) ██ The defendant has the burden of showing incompetence of counsel as a "demonstrable reality";

speculation is not enough. (*People* v. *Reeves, supra,* 64 Cal.2d at p. 774.) Furthermore, it is settled law that defense counsel's lack of diligence or competence must have reduced the trial to a "farce or a sham." (*People* v. *Ibarra, supra,* 60 Cal.2d at p. 464.)

■ The fact that defense counsel did not object to the introduction of evidence or instructions is not, in and of itself, any demonstration of inadequacy. (Cf. *People* v. *Hayes* (1971) 19 Cal.App.3d 459, 471-472 [96 Cal.Rptr. 879].) It must be remembered that counsel, through strenuous cross-examination, attempted to cast doubt on the identity of defendant as the culprit. This was a matter of trial strategy rather than the deprivation of a crucial defense. We may not second-guess counsel's trial strategy. (*People* v. *Simms* (1970) 10 Cal.App.3d 299, 316 [89 Cal.Rptr. 1].) Finally, to paraphrase *People* v. *Gann* (1968) 267 Cal.App.2d 811, 814 [73 Cal.Rptr. 502], defendant brought about his situation and no attorney could be expected to extricate him by magic. Trial counsel did all he could with the facts he had to work with. (*People* v. *Ferguson* (1968) 261 Cal. App.2d 807, 810-811 [68 Cal.Rptr. 431].)

■ In *Griffin* v. *California* (1965) 380 U.S. 609, 615 [14 L.Ed.2d 106, 110, 85 S.Ct. 1229], the court states: "We . . . hold that the Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."

Defendant now argues this right was violated by the comments of the prosecutor during his closing argument, to wit:

"But let's look at the defense. What is the defense? There is no defense. There has not been one shred of evidence introduced in this trial indicating that Mr. Gaulden didn't commit this crime. Not one.

". . . . . . . . . . . . . . . .

"This wasn't an assault on another inmate because of a beef they had had, this wasn't an assault on a guard because maybe the guard had harassed him or they were having trouble, this was an assault on a free man, a guy whose job it is just to fold towels and make sure that the laundry runs effectively.

"I don't know why he killed him, but he killed him. We may never know why he killed him. But the fact remains that Mr. Turner died at a young age, was taken from this earth at the hands of this man; and *as he sits here right now, right here, he knows he's guilty of that crime. He knows he*

*murdered Ronald Turner*. He planned it, he armed himself with a knife, he waited for the opportune moment when the escape route was there, and he stabbed him and stabbed him and stabbed him. And he died, yelling, 'Help me.'

*"And now he sits there and asks you to judge him, asks you to acquit him on the evidence that's been presented, which is none;* and I just don't think you will do that." (The above quotation is in context. The italicized portion is that set out in defendant's brief.)

We note no objection was made to the prosecutor's closing remarks. In the declaration of trial counsel attached to defendant's opening brief, trial counsel states he did not object because he thought that objection would further prejudice his client by focusing the jury's attention on his failure to testify. Even without such a statement, the necessary conclusion under the facts of this case is that his failure to object was a trial tactic. (See *People* v. *Hayes, supra,* 19 Cal.App.3d at p. 471.) By reason of the absence of any objection, defendant may not raise this contention on appeal. (*People* v. *Terry* (1970) 2 Cal.3d 362, 391 [85 Cal.Rptr. 409, 466 P.2d 961].) Furthermore, this was not a closely balanced case and an admonitory instruction could have eradicated any prejudice. (See *People* v. *Rice* (1970) 10 Cal.App.3d 730, 743 [89 Cal.Rptr. 200].)

We do not view the comments of the prosecutor as constituting *Griffin* error. Essentially these passages state that the defendant has failed to produce any evidence in his behalf. This is proper argument. "However, not every comment upon defendant's failure to present a defense constitutes *Griffin* error. ▉ It is now well established that although *Griffin* prohibits reference to a defendant's failure to take the stand in his own defense, that rule 'does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses. [Citations.]' [Citations.] For example, in *Bethea* [18 Cal. App.3d] (p. 936), the prosecutor made a closing argument which summarized the evidence against defendant and commented that ' "[t]he state of the record is that *there has been no explanation* given for this [the People's evidence of guilt]. . . ." ' (Italics added.) The court held that '[t]here is absolutely no reference to the fact that defendant did not take the stand; nor is the remark susceptible of such interpretation by inference or innuendo.' " (*People* v. *Vargas* (1973) 9 Cal.3d 470, 475-476 [108 Cal.Rptr. 15, 509 P.2d 959], and cases collected at p. 476.)

▉ Finally, even assuming that there was *Griffin* error, it was not prejudicial. In *People* v. *Vargas, supra,* 9 Cal.3d at page 478, the court states: "The applicable test for determining whether an error which violates

federal constitutional principles is reversible error is set forth in *Chapman* v. *California*, 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065], wherein the court held that 'before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.' This determination 'must be based on our own reading of the record and on what seems to us to have been the probable impact of the . . . [errors] on the minds of an average jury.' (*Harrington* v. *California,* 395 U.S. 250, 254 [23 L.Ed.2d 284, 287-288, 89 S.Ct. 1726].)"

Relying upon *People* v. *Modesto* (1967) 66 Cal.2d 695, 713 [59 Cal. Rptr. 124, 427 P.2d 788], the court in *Vargas* went on to point out that attention must be focused upon the extent to which the comment itself might have increased the jury's inclination to treat the defendant's silence as an indication of his guilt. Applying this test we find no such inclination under the facts of this case. Defendant was caught in the act of removing a knife from the deceased and the observer identified the defendant. Also, circumstantial evidence was introduced which tied defendant to the crime. Furthermore, the prosecutor's remarks here cannot be characterized as a "machine-gun repetition" of a denial of defendant's rights, all designed and calculated to make defendant's version of the evidence worthless. (See *People* v. *Modesto, supra,* 66 Cal.2d at p. 714.) We conclude the error, if any, was harmless. (See *People* v. *Vargas, supra,* 9 Cal.3d at pp. 478-479.)

▆▆▆ Defendant also contends the court violated his rights under *Griffin* by giving CALJIC instructions Nos. 2.60 and 2.61. Defendant contends the trial judge gave these instructions on his own motion. However, the record is not clear whether the judge did so or whether the instructions were given on request of one of the parties.

CALJIC No. 2.60 provides: "It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus the decision as to whether he should testify is left to the defendant, acting with the advice and assistance of his attorney. You must not draw any inference of guilt from the fact that he does not testify, nor should this fact be discussed by you or enter into your deliberations in any way."

This instruction is a direct result of the holding in *Griffin* and seeks to prevent the evil condemned by that case in that it expressly forbids the jury from drawing an inference of guilt from the defendant's failure to testify. (*People* v. *Gardner* (1969) 71 Cal.2d 843, 853-854 [79 Cal.Rptr. 743, 457 P.2d 575].) Although there is no duty on the part of the court to give CALJIC No. 2.60, *sua sponte* (*People* v. *Du Bose* (1970) 10 Cal.App.3d

544, 547-548 [89 Cal.Rptr. 134]), we think under the circumstances present here, and in the absence of objection, the instruction was proper. (*People* v. *Brown* (1967) 253 Cal.App.2d 820, 830 [61 Cal.Rptr. 368]; cf. *People* v. *Molano* (1967) 253 Cal.App.2d 841, 846-847 [61 Cal.Rptr. 821, 18 A.L.R.3d 1328] [instruction given over strenuous objection]; see also *People* v. *Hernandez* (1968) 264 Cal.App.2d 206, 208-212 [70 Cal.Rptr. 330].)

CALJIC No. 2.61 provides: "In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove every essential element of the charge against him, and no lack of testimony on defendant's part will supply a failure of proof by the People so as to support a finding against him on any such essential element."

The present case must be distinguished from *Vargas. In Vargas,* CALJIC No. 2.61 was also challenged on appeal. At that time the instruction read: "In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove every essential element of the charge against him, and no lack of testimony on defendant's part will supply a failure of proof by the People so as to support *by itself* a finding against him on any such essential element. (Italics added.)" (See *People* v. *Vargas, supra,* 9 Cal.3d at p. 475.)

The Supreme Court agreed with the defendant in *Vargas,* noting that the words "by itself" in the instruction improperly allowed the jury to assume that "if the People have presented some evidence of guilt, the defendant's silence can then be considered as supplementing the People's case." This, the court held, constitutes *Griffin* error. (9 Cal.3d at p. 477.)

In the instant case, however, CALJIC No. 2.61 was given in its revised form. As noted in *Vargas* (p. 475, fn. 4), the objectionable language in that instruction has now been deleted, and thus the revised form does not permit any assumption that the defendant's silence can be used to supplement the People's evidence. Accordingly, we find no error since defendant's Fifth Amendment rights were protected.

Defendant next argues that reversal of his conviction is required because of certain specific acts of misconduct by the prosecutor during his argument to the jury. (See *People* v. *Perez* (1962) 58 Cal.2d 229, 248-250 [23 Cal.Rptr. 569, 373 P.2d 617, 3 A.L.R.3d 946].) Although defendant uses a shotgun approach, we can isolate five instances cited by defendant as the basis for misconduct: (1) the prosecutor wrongly stated that defendant was charged with murder in the first degree; (2) the prosecutor

stated that defendant concealed a knife upon his person where there was no evidence to show that fact; (3) the prosecutor argued that the deceased was alone in the sock room according to the testimony of inmate Linker, when in fact Linker denied knowing who was there; the prosecutor put his own integrity into issue to bolster the credibility of prosecution witnesses; and (5) the prosecutor improperly suggested that the burden of proving innocence shifted to the defendant once the People closed their case.

 A statement of the law pertaining to a claim such as that posed by defendant is found in *People* v. *Beivelman* (1968) 70 Cal.2d 60, 75-77 [73 Cal.Rptr. 521, 447 P.2d 913]: "As stated in *People* v. *Mitchell,* 63 Cal.2d 805, 809 [48 Cal.Rptr. 371, 409 P.2d 211], 'Misconduct in argument may not be assigned on appeal if it was not assigned at the trial, unless the misconduct contributed to the verdict or was so unredeemable that nothing whatever would have cured it. [Citations.]'

"In *People* v. *Asta,* 251 Cal.App.2d 64, 86-87 [59 Cal.Rptr. 206], the court stated: 'It is well settled, requiring no citation of authority, that misconduct of a prosecutor in a criminal trial may consist of improper remarks in the opening statement, improper examination or cross-examination, or improper argument. However, the term "misconduct" implies a dishonest act or an attempt to persuade the court or jury, by use of deceptive or reprehensible methods [citations] . . . Moreover, with two exceptions, the burden is on the defendant who claims that the prosecutor was guilty of misconduct to object and to seek a curative admonition. Hence, if he is silent or merely objects or makes the assignment of misconduct but does not request an admonition, he cannot complain on appeal (Witkin, Cal. Criminal Procedure (1963) § 748, p. 722).'

". . . . . . . . . . . . . . . . . . .

 "The ultimate question which must be answered is whether the conduct of the district attorney was prejudicial, that is, after a review of the entire cause, is it reasonably probable that a result more favorable to the defendant would have occurred had the district attorney refrained from the comment attacked by the defendant. [Citations.] . . . .

". . . . . . . . . . . . . . . . . .

". . . ' "It is the province of a district attorney to state to a jury the various conclusions that he draws from the evidence, and to make it clear to the jury what conclusions in his opinion should be drawn from the evidence introduced, so long as he keeps within the scope of conclusions which may properly be drawn." [Citation.] "The right of counsel

to discuss the merits of a case, both as to the law and facts, is very wide, and he has the right to state fully his views as to what the evidence shows, and as to the conclusions to be fairly drawn therefrom. The adverse party cannot complain if the reasoning be faulty and the deductions illogical, as such matters are ultimately for the consideration of the jury." [Citation.] In the argument before the jury, any reasonable inference may be drawn from the evidence, and it is a matter within the discretion of the trial court to determine whether counsel stays within the permissible range of discussion.' [Citation.]"

In view of the above principles, our review of the record in this case demonstrates that the alleged errors complained of did not constitute such prejudicial error as to require reversal.

The instant case falls squarely within the guidelines set forth in *Beivelman*. As in that case, here there was no objection to any of the remarks assigned as error and this was not a closely balanced case where there is grave doubt of defendant's guilt. Moreover, none of the remarks were of such a character that they could not be obviated by any retraction of counsel or instruction of the court. (See *People* v. *Perez, supra,* 58 Cal.2d at p. 247.)

Furthermore, the comments referred to generally constitute no more than proper comment upon the evidence presented and what the prosecution reasonably thought the evidence proved.

For example, although the indictment charged murder, the prosecutor obviously sought to prove murder in the first degree and did so. This was proper argument. (Cf. *People* v. *Wallace* (1970) 13 Cal.App.3d 608, 616 [91 Cal.Rptr. 643].) Likewise, with respect to the arguments that defendant concealed a knife upon his person and assaulted Turner alone in the sock room are both proper arguments since they were reasonable inferences from all of the evidence presented. We also note that, contrary to defendant's allegation, the prosecutor did *not* argue that the deceased was alone in the sock room according to the testimony of inmate Linker.

As to the prosecutor putting his own integrity into issue, the record shows the following argument of the prosecutor:

"You have heard the defense. The correctional officers, the correctional staff set up Jeffrey Gaulden. They conspired against him. They came in here and lied, and I guess that from Mr. Vaughn's argument, you can add me to the list, because as the evidence indicated, I was up there on the day of the crime after these events. I was up on the ledge where the knife was found. I was there when the photos were taken; and I guess if those wit-

nesses that I brought in here are guilty of perjury, then I am guilty of suborning perjury and I should be disbarred."

When read in context, it is clear that this was proper rebuttal to defense counsel's argument and to emphasize that the defense had presented *no* evidence to support its theory that the prosecution's case was wholly fabricated. (Cf. *People* v. *Muir* (1966) 244 Cal.App.2d 598, 601-602 [53 Cal.Rptr. 398].)

Finally, the defendant argues the prosecutor spoke as if the burden of proof passes to the defendant once the prosecution has put in some evidence on a particular point. For example, the defendant cites this statement of the prosecutor: "[I]t is my duty to prove the truth to you; and if I do, then it is his duty to defend himself against it; and I submit to you there is no evidence indicating he is not guilty of this crime."

We do not regard this statement as an instruction on burden of proof. It was proper comment on the state of the evidence, i.e., the defense produced no evidence to show that defendant was not the culprit. In any event, the trial court properly instructed the jury on reasonable doubt.

■■■ Defendant contends the trial judge improperly denied important requests for pretrial discovery. (In general see *People* v. *Riser* (1956) 47 Cal.2d 566, 586 [305 P.2d 1].)

Defense counsel filed a sweeping pretrial motion requesting the production of the complete personnel files of all prison staff members and the inmate files of all prisoners that each side was considering calling to testify at trial. Defense counsel wanted these materials for impeachment purposes. The prosecution opposed the breadth of the motion but did offer to go through the files and disclose any material which might be relevant to impeachment. Eventually the trial court denied defendant's motion. He now assigns this as error.

In *Engstrom* v. *Superior Court* (1971) 20 Cal.App.3d 240, 243 [97 Cal.Rptr. 484], the court states: "The theory behind criminal discovery was stated in *People* v. *Riser* (1956) 47 Cal.2d 566, 586 [305 P.2d 1]: 'Absent some governmental requirement that information be kept confidential for the purposes of effective law enforcement, the state has no interest in denying the accused access to all evidence that can throw light on issues in the case, and in particular it has no interest in convicting on the testimony of witnesses who have not been as rigorously cross-examined and as thoroughly impeached as the evidence permits.' The same policy applies to information not in the prosecutor's possession but available at

his request from other agencies which are part of the criminal justice system."

The court in *Engstrom* required discovery of the prosecution on several matters but drew the line on the following: "[P]ortions of the detention, arrest, or conviction records of (nonvictim) witnesses and all other 'police reports, memoranda, or other information in the actual or constructive possession of or available to the District Attorney' which relate to any act or attempted act of violence or 'assaultive. conduct' by a victim or other witness." (20 Cal.App.3d at p. 245.)

The appellate court held that the trial court acted properly in denying these requests since they lacked sufficient specificity, relying on *Ballard* v. *Superior Court* (1966) 64 Cal.2d 159 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R. 1416].) In *Ballard* the court states (at p. 167): "As we said in *People* v. *Cooper* (1960) 53 Cal.2d 755, 770 [3 Cal.Rptr. 148, 349 P.2d 964], 'The court properly denied the blanket request that the prosecution turn over to defense counsel all the statements which it had. Although the defendant does not have to show, and indeed may be unable to show, that the evidence which he seeks to have produced would be admissible at the trial [citations], he does have to show some better cause for inspection than a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime.' [Citations.]

"Our position does not reflect 'a swing of the pendulum' (Louisell, Modern Cal. Discovery (1963) 404) away from our fundamental concern that an accused be provided with a maximum of information that may illumine his case. (See *People* v. *Riser* (1956) 47 Cal.2d 566, 586 [305 P.2d 1].) A defendant's motion for discovery must nevertheless describe the requested information with at least some degree of specificity and must be sustained by plausible justification."

We think this blanket request for the complete personnel file of each prison staff member and the complete inmate file of each prisoner for "impeachment" purposes fails to meet the specificity test set forth in *Ballard*. (See also *Elmore* v. *Superior Court* (1967) 255 Cal.App.2d 635, 639 [63 Cal.Rptr. 307].) Furthermore, the prosecutor here, according to the record, offered to supply impeachment material from the files, yet defense counsel apparently rejected this offer. ■ Finally, "the court retains wide discretion to protect against the disclosure of information which might unduly hamper the prosecution or violate some other legitimate governmental interest." (*Joe Z.* v. *Superior Court* (1970) 3 Cal.3d 797, 804 [91 Cal.Rptr. 594, 478 P.2d 26].) ■ We think there is a legitimate public interest in protecting against wholesale disclosure of the matters here asked for. (See Evid. Code, § 1040; see also Gov. Code,

§ 6254, subd. (f).) We conclude the trial court did not abuse its discretion in denying the pretrial discovery motion. (Cf. *Procunier* v. *Superior Court* (1973) 35 Cal.App.3d 207 [110 Cal.Rptr. 529].)

For the first time on appeal, defendant suggests the motion should have been granted so that he would have had the opportunity to discover previous complaints of violence by prison inmates or other guards. That justification was not before the trial court, is not in the record, and therefore will not be considered by us on this appeal. (*People* v. *Merriam, supra,* 66 Cal.2d at pp. 396-397.)

■ Defendant contends that his conviction should be reduced by this court to murder in the second degree. He cites two main reasons. First, he contends that the evidence is insufficient to support the verdict in that there is no substantial evidence the killing was committed by lying in wait *or* that it was willful, deliberate and premeditated. Second, he argues the court erroneously gave CALJIC instructions Nos. 3.30 and 3.34 in that these are instructions on general criminal intent applicable only to general intent crimes.

■ Before proceeding to these contentions, we review the rules regarding an attack on the sufficiency of the evidence which are succinctly set forth in *People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649]: "An appellate court must view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.] ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.] ■ The test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt. [Citation.] The appellate court must determine whether a reasonable trier of fact could have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt. [Citations.]"

Defendant appears to argue the verdict was based mainly on speculation, conjecture and mere suspicion. He also sets forth several of his "hypotheses" which he contends are equally consistent with the evidence. The answers to such allegations are found in *Reilly, supra,* and in *People* v. *Saterfield* (1967) 65 Cal.2d 752, 759 [56 Cal.Rptr. 338, 423 P.2d 266], where the court states: "These are arguments to be made to a jury, not to an appellate court. Defendant in effect requests us to reweigh and reinterpret the evidence in a manner consistent with innocence of the crime of first degree murder. But such a determination is the function of the trier of fact; at

this stage the test is not whether the evidence may be reconciled with innocence, but whether there is substantial evidence in the record on appeal to warrant the inference of guilt drawn by the trier below. [Citation.]

 "It is settled that 'To establish the crime of first degree murder, direct evidence of a deliberate and premeditated purpose to kill is not required. The necessary elements of deliberation and premeditation may be inferred from proof of such facts and circumstances as will furnish a reasonable foundation for such an inference, and where the evidence is not in law insufficient, the matter is exclusively within the province of the trier of fact to determine.' [Citations.]"

In the instant case, the jury was instructed on both deliberate and premeditated murder and on murder by lying in wait.

 Turning first to lying in wait, it is well settled that the elements required are waiting, watching and concealment. (*People* v. *Merkouris* (1956) 46 Cal.2d 540, 559 [297 P.2d 999].)

 The facts of this case show the following:

The killing occurred in a prison which, by its very nature, maintains surveillance over those within its confines. The defendant was assigned to work in the press room of the laundry area on the day of the stabbing. Prior to the time of the stabbing, however, he was seen sitting in a chair in another area of the laundry building. Randle wondered why he was sitting there when he was supposed to be back in the press room. Two other inmates were assigned to work in the sock room on the day in question, but those inmates had already left the area at the time of the killing. When Randle went back to the sock room, he saw the defendant withdrawing a knife from the body of Turner. Randle saw no one else in the area of the sock room. From these facts, the jury could reasonably infer that the defendant lay in wait, intending to kill Turner. (*People* v. *Harrison* (1963) 59 Cal.2d 622, 630-631 [30 Cal.Rptr. 841, 381 P.2d 665] ["[T]he jury could reasonably have inferred that the killer was in hiding, as no one saw him before the murder, and that he was waiting for Mrs. Martin, as he immediately attacked her when she left the apartment house." *Harrison* distinguished *Merkouris* since in the latter case the killing did not occur until two days after the watchful waiting.]; see also *People* v. *Rosoto* (1962) 58 Cal.2d 304, 355 [23 Cal.Rptr. 779, 373 P.2d 867].)

 As to the other theory of the prosecution, murder is also of the first degree when it is willful, deliberate and premeditated. (Pen. Code, § 189.)

As stated in *People* v. *Anderson* (1968) 70 Cal.2d 15, 26-27 [73 Cal. Rptr. 550, 447 P.2d 942]: "The type of evidence which this court has found sufficient to sustain a finding of premeditation and deliberation falls into three basic categories: (1) facts about how and what defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward, and, explicable as intended to result in, the killing—what may be characterized as 'planning' activity; (2) facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim, which inference of motive, together with facts of type (1) or (3), would in turn support an inference that the killing was the result of 'a pre-existing reflection' and 'careful thought and weighing of considerations' rather than 'mere unconsidered or rash impulse hastily executed' (*People* v. *Thomas, supra,* 25 Cal.2d 880, at pp. 898, 900, 901 [156 P.2d 7]); (3) facts about the nature of the killing from which the jury could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take his victim's life in a particular way for a 'reason' which the jury can reasonably infer from facts of type (1) or (2).

"Analysis of the cases will show that this court sustains verdicts of first degree murder typically when there is evidence of all three types and otherwise requires at least extremely strong evidence of (1) or evidence of (2) in conjunction with either (1) or (3)." (Original italics.)

From our review of the record we conclude that the verdict was clearly justified under *Anderson* since there was evidence of "planning activity" (defendant arming himself with a knife and secreting himself in the sock room), a prior relationship leading to a motive (rejection of defendant as Randle's clerk), and the manner of killing (multiple wounds). Thus, the verdict was proper under either of the two theories propounded to the jury.

■ Finally, defendant contends the trial court improperly instructed the jury *sua sponte* that murder requires a general criminal intent. He argues that murder in the first degree is a specific intent crime and that it is error to give a general intent instruction since it may tend to confuse the jury. (*People* v. *Hill* (1967) 67 Cal.2d 105, 117-118 [60 Cal.Rptr. 234, 429 P.2d 586].)

Again it must be noted, despite defendant's argument, that the record does not indicate that the trial court gave the instructions upon its own motion or upon a motion from one of the parties.

However, assuming that defendant did not request the general intent instruction, there was no error because the instruction was clearly qualified by the subsequently given instructions on specific intent ("willful, deliberate and premeditated") or "lying in wait" in order to convict of first degree murder. In addition, the jury was instructed on malice aforethought. (See *People* v. *Hill, supra,* at pp. 118-119.)

Furthermore, even if the giving of the general intent instruction was error, it was not prejudicial. As stated in *People* v. *Hill, supra,* 67 Cal.2d at page 119: "No miscarriage of justice (Cal. Const., art. VI, § 13) results where the jury could not have been misled by an unnecessary instruction on general intent (*People* v. *Smith,* 223 Cal.App.2d 225, 233 [35 Cal.Rptr. 719]); nor is the error prejudicial where the nature of the acts done by the accused preclude belief that they were done without specific intent (*People* v. *Booth, supra,* 111 Cal.App.2d 106, 109 [243 P.2d 872].)"

■ In his closing brief, defendant argues for the first time that he is entitled to a new trial under Penal Code section 1202 since the trial court did not grant him a hearing on his *pro se* motion for a new trial which was denied. The trial court properly denied the motion.

Penal Code section 1202 provides: "If no sufficient cause is alleged or appears to the court at the time fixed for pronouncing judgment, as provided in Section 1191 of this code, why judgment should not be pronounced, it must thereupon be rendered; and if not rendered or pronounced within the time so fixed or to which it is continued under the provisions of Section 1191 of this code, then the defendant shall be entitled to a new trial. If the court shall refuse to hear a defendant's motion for a new trial or when made shall neglect to determine such motion before pronouncing judgment or the making of an order granting probation, then the defendant shall be entitled to a new trial."

Judgment was pronounced and rendered on May 30, 1972. Defendant's motion *pro se* was made after such time and thus was untimely and improperly filed.

The judgment is affirmed.

Richardson, P. J., and Good, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 27, 1974.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.