[No. B041441. Second Dist., Div. Seven. Jan. 11, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
KEITH EDWARD WOODS, Defendant and Appellant.

1040

**COUNSEL**

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Linda C. Johnson and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—Appellant, Keith Edward Woods, appeals from a judgment imposed on a jury verdict finding him guilty of second degree murder, but finding not true the firearm use allegation; and of two counts of attempted murder while personally using a firearm. Because we find it was error to deny the instruction on the lesser related offense of assault with a deadly weapon, we conditionally reverse the attempted murder convictions. Additionally, the parties agree it was error not to fully advise appellant of his constitutional rights before admission of prior offenses. Consequently, the conviction on the prior offense allegation must be reversed as well. The judgment is affirmed in all other respects.

### FACTS AND PROCEEDINGS BELOW

At approximately 11 a.m. on March 27, 1988, Waymond Jackson (Jackson) was riding in a car driven by his friend, John Smith (Smith), when he saw his friend Donald Hayes (Hayes) standing in a yard talking with his girlfriend, Leslie Gray (Gray).

Smith parked the car on 57th Street and Smith and Jackson got out to ask Hayes for some money. Hayes replied he did not have any so Smith and Jackson walked back to Smith's parked car. As Jackson and Smith stood talking by Smith's car, a white two-door Cadillac Coupe de Ville approached. The Cadillac slowed down as it reached Smith's car. Appellant, seated in the passenger seat, pointed a gun at Jackson and Smith and fired two shots. The shots were fired from a distance of 10 to 15 feet. Smith and Jackson sought cover behind Smith's car.

As the white Cadillac drove off, Jackson jumped up and said, "That was Katoe from Five-Nine." "Five-Nine" refers to the Five-Nine East Coast Crips gang.

In the meantime, Hayes had gotten into his car and had pulled away on 57th Street in the direction of Compton Boulevard. Hayes's car pulled up to the stop and prepared to make a left turn. The white Cadillac pulled up to Hayes's car in the right lane. Shots were fired from someone in the white Cadillac into Hayes's car. One bullet struck Hayes in the right forehead, fatally wounding him.

Jackson, Smith and Gray testified to the foregoing with only minor deviation.

Jackson, an admitted Bloodstone Villain gang member, testified the Bloods and the Crips do not get along. The neighborhood where the shoot-

ings occurred was Bloodstone Villain territory. Bloodstone Villains and the Crips gangs hate each other and have a violent relationship.

Smith testified that immediately after the shots were fired at him and Jackson and the white Cadillac had accelerated up the street, he got in his car and followed the white Cadillac as it turned right onto Compton. He saw the head of a third man rise up in the backseat and look back and forth as if to see if the police or someone else was following.

Smith testified the vicinity of 57th Street and Compton is a Bloodstone Villain gang neighborhood. He further stated a person with the moniker Tee Tiger had been shot at a liquor store at 56th Street and Compton. Tee Tiger was a member of the Five-Nine East Coast Crips gang.

Gray testified that immediately after the shots were fired at Jackson and Smith she ran up the street to where Hayes's car was waiting at the stop sign at Compton. She heard at least one gunshot and saw Hayes's head turn to the side. She followed Hayes's car where it crossed Compton and crashed into a gate at an apartment house. Gray testified she knew Hayes had the name "Don Kapone" tatooed on his arm but said she never called him by that name.

A forensic pathologist testified the autopsy revealed the name "Don Kapone" was tatooed on Hayes's left forearm.

Paul Reyna, a police officer assigned to the gang unit, was the investigating officer in the case. From the police computer files, Detective Reyna discovered there were 25 possible Katoes in the Los Angeles area and 3 Katoes in the Five-Nine East Coast Crips gang. Appellant was the only Katoe in the Five-Nine East Coast gang who was also known to drive a white Cadillac, thus the investigation focused on appellant. Detective Reyna testified as an expert on gang culture generally and testified specifically as to evidence uncovered in a search of appellant's home. In appellant's bedroom, Detective Reyna found a blown-up photograph of a funeral. The photograph depicted male Blacks dressed in blue standing around a casket. Members of the Crips gang dress in blue. When appellant was asked the identity of the person in the coffin, he replied it was his homeboy, Tee Tiger. Some of the people in the photograph were making Five-Nine East Coast Crips gang hand signs and one wore a sweater with the numbers 5 and 9 on it. Detective Reyna was of the opinion the people in the photo were Five-Nine East Coast gang members.

On top of a dresser directly beneath this photo was a stack of letters addressed to appellant which bore gang graffiti. Some of the letters were

from Anthony Hunter, who Detective Reyna testified was otherwise known by his moniker, Tee Tiger. Another letter was addressed to "O.G. Katoe Loc." The term "O.G." stands for "original gangster" in gang parlance and is a sign of respect. The name Loc stands for crazy and usually refers to a gang member who will stand up for his neighborhood and his gang. One document was a roster or roll call of the members of the Five-Nine East Coast Crips gang. Among the names on this roster were O.G. Tee Tiger Loc and Katoe. Another roster had slogans written on it such as "Five-Nine East Coast Crips," "Neighborhood Cuz," "Bloodstone Villain Killer," "O.G. Tee Tiger" and "O.G. Katoe Loc." The words "Bloodstone Villains" were also on this document and were crossed out. It is common for a gang to cross out the name of a rival gang. One letter bore graffiti depicting a person behind bars, the name "O.G. Tee Tiger," and a "B" crossed out and a "K," which indicated "Bloods Killers." In most of these documents and letters, the letter "B" is omitted from words because Crips gang members do not use the letter "B" as it stands for Bloods.

Detective Reyna also testified the homicide victim Hayes had been a Bloods gang member. He said the name Capone is a moniker used by some gang members. The tattoo on Hayes's arm began with the letter "K" rather than the letter "C" because Bloods gang members do not use the letter "C" as it stands for Crips.

The detective stated when a gang member is killed by a rival gang, gang culture demands retaliation against the rival gang. Such retaliation is usually done immediately. Tee Tiger died in July 1986, approximately one and a half years earlier than the shooting in this case.

Appellant's mother, Essie Woods, testified on his behalf. She said on March 27, 1988, appellant, Mrs. Woods and her five other children lived on East 98th Street, a considerable distance from the location of the shooting. That morning Mrs. Woods got up around 6 a.m. and observed appellant asleep in bed. Mrs. Woods testified appellant did not get up that morning until awakened by a telephone call between 11:30 and noon. She said appellant left the house around 1:30 or 2:30 that afternoon.

Mrs. Woods identified photographs of her white four-door Fleetwood Cadillac taken by Detective Reyna during the search of appellant's home. On the morning of March 27th, the car was parked in the driveway and did not leave her house. Mrs. Woods said she heard about the shooting when a family friend came to her house that day requesting a photo of appellant to see if he was the person involved. Mrs. Woods confirmed appellant and Tee Tiger had been close friends.

Appellant was charged in an amended information with murder (Pen. Code, § 187) and with attempted murder with premeditation and deliberation (Pen. Code, §§ 664, 187). Each count further alleged appellant personally used a firearm (Pen. Code, §§ 1203.06, subd. (a)(1) & 12022.5) in the attempted commission and commission of the offenses, causing the offenses to become serious felonies (Pen. Code, § 1192.7, subd. (c)(8)). It was further alleged appellant had previously been convicted of the felonies of robbery (Pen. Code, § 667, subd. (a)) and possession of rock cocaine for sale (Health & Saf. Code, § 11351).

After trial by jury, appellant was found guilty of second degree murder but the firearm use was found to be not true. Appellant was also found guilty of the attempted murders while personally using a firearm. The jury, however, found the attempted murders were not committed with premeditation or deliberation.

## DISCUSSION

### I. THERE IS SUFFICIENT EVIDENCE TO SUPPORT THE CONVICTIONS.

In *Jackson* v. *Virginia* (1979) 443 U.S. 307, the United States Supreme Court enunciated the federal constitutional standard for reviewing the sufficiency of evidence in support of a state criminal conviction. The "critical inquiry" is "to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." The reviewing court does not determine "whether *it* believes that the evidence at trial establishes guilt beyond a reasonable doubt," but whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Id.* at pp. 318-319 [61 L.Ed.2d at p. 573].) (Italics in original.)

This standard was reaffirmed in *People* v. *Johnson* (1980) 26 Cal.3d 557 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]. The California Supreme Court stated an appellate court "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—this is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*Id.* at p. 578.) "Whether the evidence presented at trial is direct or circumstantial, . . . the relevant inquiry on appeal remains whether *any* reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People* v. *Towler*

(1982) 31 Cal.3d 105, 118 [181 Cal.Rptr. 391, 641 P.2d 1253]; italics in original.)

A review of the whole record in the light most favorable to the judgment reveals sufficient evidence in support of the jury's finding of guilt.

A. *There Is Sufficient Evidence to Support the Second Degree Murder Conviction.*

The jury was instructed on premeditated and deliberate first degree murder and unpremeditated second degree murder with express or implied malice. The jury was also instructed on aider and abettor liability. The jury found appellant guilty of second degree murder but found not true the allegation appellant personally used a firearm in the commission of the crime.

Appellant claims there is insufficient evidence of specific intent to kill for a finding of express malice, especially because the jury rejected a finding appellant acted with premeditation and deliberation. Appellant also claims there is insufficient evidence to support a finding of implied malice.

Penal Code section 187, subdivision (a) provides: "Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." Malice may be express or implied. "It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (Pen. Code, § 188.)

"[S]econd degree murder based on implied malice has been committed when a person does ' " 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life' ". . . .' [Citations.] Phrased in a different way, malice may be implied when defendant does an act with a high probability that it will result in death and does it with a base antisocial motive and with a wanton disregard for human life. [Citation.]" (*People* v. *Watson* (1981) 30 Cal.3d 290, 300 [179 Cal.Rptr. 43, 637 P.2d 279].)

Viewing the evidence in the light most favorable to the judgment, we conclude a rational trier of fact could find appellant guilty of second degree murder beyond a reasonable doubt.

The jury could have based its verdict on a finding of express malice. There was evidence the Bloods and the Crips have a violent relationship.

All witnesses said the Five-Nine East Coast Crips and the Bloodstone Villains hate each other. The homicide occurred in Bloodstone Villain territory. The fatal shots were fired from a car in which Crips were passengers. The victim was a reputed Bloods gang member. The shots were not sprayed into the air but were directed towards the victim and his car. One such shot went through the victim's forehead, ultimately killing him. Tee Tiger, a highly ranked Five-Nine East Coast Crips gang member, died within a block of the shootings. There was evidence gangs retaliate against rival gangs for deaths of fellow gang members. The jury could also have considered the evidence just moments before appellant shot at Jackson and Smith from the same car.

In sum, there is sufficient evidence from which a reasonable jury could find beyond a reasonable doubt appellant and his cohorts intended to kill Hayes.

 The jury could also have based its verdict on a finding of implied malice. Even without the foregoing facts, it would seem obvious the intentional firing of a gun at the victim at close range is an act dangerous to human life and presents a high probability of death. The victim was in fact mortally wounded and died as a result of those shots. A reasonable jury could also conclude retaliation and gang violence are base antisocial motives and display a wanton disregard for the value of human life sufficient to find implied malice for a conviction of second degree murder.

We conclude there was substantial evidence from which a reasonable jury could find appellant guilty of second degree murder.

B. *There Was Sufficient Evidence to Support the Conviction for Second Degree Attempted Murder.*

 The jury was properly instructed in order to find defendant guilty on the attempted murder charges, it had to find defendant had the specific intent to kill. (CALJIC No. 8.66 (1987 ed.); CALJIC No. 8.67 (1987 ed.); *People* v. *Lee* (1987) 43 Cal.3d 666 [238 Cal.Rptr. 406, 738 P.2d 752].)

Appellant argues because the jury did not find he acted with premeditation and deliberation, they rejected the prosecution theory that he came to the Bloods' territory for the express purpose of killing. As a consequence, the jury finding of guilt for the attempted murders has to be based instead on the fact of shooting a gun at close range which is insufficient, as his intent could have been only to disable. (See, e.g., *People* v. *Ratliff* (1986) 41 Cal.3d 675, 695 [224 Cal.Rptr. 705, 715 P.2d 665].) Alternatively, the jury

could have focused on the fact of appellant's gang membership. Appellant argues because this evidence tends to show a disposition to commit crime, it is improper character evidence which is legally insufficient to prove an intent to kill. (Evid. Code, § 1101.)

Respondent contends firing multiple shots at close range is sufficient evidence of intent to kill. Moreover, the evidence of gang membership and gang culture was not used to prove character but instead to prove motive for and a specific intent to kill.

■ Viewing the evidence, as we must, in the light most favorable to the judgment we conclude there was sufficient evidence to support the finding appellant had the requisite intent to kill to support the second degree attempted murder convictions.

There was testimonial evidence appellant was a member of the Crips, that at least one of the attempted murder victims was a member of the Bloods, and that the Crips and Bloods hate each other and have a violent relationship. Jackson and Smith testified the car in which appellant was a passenger slowed down and/or stopped as it approached the victims. Smith testified the occupants of the car stared at them for 10 to 20 seconds before firing. Both witnesses said appellant pointed the gun directly at them and fired 2 shots from approximately 10 to 15 feet away.

The detective testified appellant was referred to as Katoe O.G. Loc because he was a respected original gangster known for standing up for his neighborhood. He further testified gangs retaliate for the killing deaths of fellow gang members. It could be inferred from the evidence appellant intended to kill a rival gang member in retaliation for the death a year and a half ago of Tee Tiger with whom he was very close. Evidence included the enlarged photo of Tee Tiger's funeral in appellant's bedroom, the letters to appellant from Tee Tiger indicating they were Bloods killers and the fact appellant kept these two-year-old letters on his dresser under that photo.

Thus, there is substantial evidence from which a rational jury could find evidence of specific intent to kill to support a guilty verdict of attempted murder.

But this does not mean on this evidence a reasonable juror was compelled to find a specific intent to kill. There is sufficient evidence in the record of both intent to kill and of the lesser related offense of assault with a deadly weapon.

## II. It Was Prejudicial Error to Refuse Instructions on Assault With a Deadly Weapon, a Lesser Related Offense of Attempted Murder.

Appellant also asserts the trial court erred in refusing to instruct the jury on assault with a deadly weapon as a lesser related offense to the charge of attempted murder. We agree.

In *People* v. *Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055], the California Supreme Court held due process requires a criminal defendant be allowed to request jury instructions on a lesser offense that is closely related to the charged offense where there is substantial evidence of its commission. In *Geiger*, the defendant's second degree burglary conviction was reversed upon the defendant's claim that in accordance with his theory of the case he could have been convicted of vandalism, a related, but not necessarily included, offense in the burglary. The Supreme Court stated: "[W]e find no reason in law, justice, or common sense why a jury that is not persuaded of the defendant's guilt of the charged offense should not have the opportunity to find him guilty of a lesser related offense where, as here, the lesser offense is closely related to that charged, there is evidence of its commission, and defendant's theory of defense is consistent with such a finding." (*Id.* at p. 514.)

The Supreme Court set forth three prerequisites to instructions on related, but not necessarily included, offenses. First, there must be "some basis, other than an unexplainable rejection of prosecution evidence, on which the jury could find the offense to be less than that charged." (*Id.* at p. 531.) Second, "the offense must be one closely related to that charged and shown by the evidence." (*Ibid.*) Third, "the instructions must be justified by the defendant's reliance on a theory of defense that would be consistent with a conviction for the related offense. Thus, the instruction need not be given if the defense theory and evidence reflect a complete denial of culpability as when the defense is alibi, or the only issue is identity, *unless the defendant argues that the evidence at most shows guilt only of the related offense.*" (*Id.* at pp. 531-532.) (Italics added.) Also, " '[t]he court should instruct the jury on every theory of the case, but only to the extent each is supported by substantial evidence.' [Citation.]" (*People* v. *Flannel* (1979) 25 Cal.3d. 668, 685 [160 Cal.Rptr. 84, 603 P.2d 1].)

 Appellant's defense theory throughout the trial was alibi, which is inconsistent with a defense theory appellant should instead be convicted of a lesser related offense. However, defense counsel requested the instruction on assault with a deadly weapon based on the fact there was substantial evidence the crime committed was no more than an assault with a deadly

weapon due to the weakness of the evidence of appellant's intent. The request was denied.

In closing arguments, moreover, defense counsel raised the issue the prosecution failed to prove appellant intended to kill at all: "She [the prosecutor] is saying that the intent of what these guys were doing was to go out looking for Bloods. Whatever she said, that wasn't evidence but her speculation with regards to what was going on. There was no testimony at all, there was no evidence put on at all, that anybody said anything about going to the Bloods territory and killing anybody. She is asking you to speculate about that.

"The judge again will give you instructions, explicit instructions, regarding what the prosecutor has to prove in order to prove an attempted murder. It is actually a heavier burden than they have to prove in a murder. They have to prove in an attempted murder that the person that committed it had the specific intent to kill. Nothing short of that will suffice. If you don't find a specific intent to kill, you can't find anybody guilty of an attempted murder."

The respondent contends it is insufficient to merely attack the sufficiency of the evidence of actual intent to kill in closing argument to justify an instruction on the lesser related offense. Respondent suggests defense counsel should also have pointed out the evidence amounted to no more than assault with a deadly weapon. This is an untenable position. To expect defense counsel to more fully argue the theory of the lesser related offense after being told the instruction would not be given would be to ask that lawyer to engage in improper conduct. In essence, in making that argument, the defense counsel would be asking the jury to go outside the law as presented by the trial court. In all probability, had he done so the prosecutor would have objected on that very ground. Undoubtedly the judge would have sustained the objection and admonished the jury to disregard any words along these lines which defense counsel might have uttered before the prosecutor's objection. ██ ██ ██ ██ Under the circumstances, defense counsel argued the specific intent issue as extensively as possible.[1]

---

[1] Respondent also argues appellant should have renewed his request after argument for the lesser related instruction in order to preserve the objection on appeal. Respondent cites this court to no authority for this proposition. Defense counsel's failure to renew his request for an instruction on the lesser related offense does not waive this error on appeal. Once a party has formally made an objection, he is not required to renew the objection at each reoccurrence thereafter. (*Green v. Southern Pacific Co.* (1898) 122 Cal. 563, 565 [55 P. 577].) Moreover, " '[a]n attorney who submits to the authority of an erroneous, adverse ruling after making appropriate objections or motions, does not waive the error in the ruling by proceeding in accordance therewith and endeavoring to make the best of a bad situation for which he was not responsible.' [Citation.]" (*People v. Calio* (1986) 42 Cal.3d 639, 643 [230 Cal.Rptr. 137, 724 P.2d 1162].)

A reasonable juror weighing the facts in this case could have found appellant guilty of assault with a deadly weapon rather than attempted murder. The finding above of sufficient evidence of intent such that a reasonable jury *could* find appellant guilty of attempted murder is not the same as saying a reasonable jury *could only* find appellant had specific intent to kill. The evidence of appellant's intent is not so overwhelming this court could say specific intent is evident from the record as a matter of law. There was no admission, confession, testimony or any other direct evidence of appellant's intent to kill. The victims were not even wounded, and there was no evidence the shots even came close enough to graze them, even though fired from only 10 or 15 feet away. The intent element sought to be proved by the prosecution was based strictly on circumstantial evidence of gang rivalry, hatred and a tradition of retaliation for the deaths of fellow gang members. There is no evidence of any actual motive of retaliation for Tee Tiger's death. In fact, there were no facts before the jury how he died at all. In other words, there is no evidence linking the two deaths together. Tee Tiger could have died of natural causes, presenting no motive whatever to retaliate for his death.

The jury in this case deliberated three days and requested a read back of Jackson's testimony, the primary prosecution witness. This indicates, if nothing else, an element of uncertainty in the jury deliberations. The jury rejected the prosecution theory of first degree premeditated and deliberate attempted murder. Because the trial court refused to give the lesser related instruction, the only other choice left for the jury was unpremeditated attempted murder. There was substantial evidence in the record to support an instruction on the closely related offense of assault with a deadly weapon, and the jury should have been given the option of convicting appellant of that offense.

Our Supreme Court has repeatedly disapproved of forcing a jury into an all or nothing choice. (*People* v. *Wickersham* (1982) 32 Cal.3d 307 [185 Cal.Rptr. 436, 650 P.2d 311]; *People* v. *Ramkeesoon* (1985) 39 Cal.3d 346 [216 Cal.Rptr. 455, 702 P.2d 613]; *People* v. *Geiger, supra*, 35 Cal.3d 510.) In a situation like the present where the jury may be convinced a defendant did something for which he ought to be punished, without a third choice between conviction on the greater offense and acquittal, there is substantial risk of an unwarranted conviction which "diminishes the reliability of both the factfinding and the sentencing determination." (*People* v. *Geiger, supra*, 35 Cal.3d at p. 519.) There the court pointed out, requiring related offense instructions allows "every material issue presented by the evidence" to be determined. (*Id.* at p. 526.) "Instructions on lesser offenses are required because a procedure which affords the trier of fact no option other than conviction or acquittal when the evidence shows that the defendant is guilty

of some crime but not necessarily the one charged, increases the risk that the defendant may be convicted notwithstanding the obligation to acquit if guilt is not proven beyond a reasonable doubt. The pressures which create that risk thus affect the reliability of the fact finding process and thereby undermine the reasonable doubt standard." (*Id.* at p. 520.)

We conclude it was prejudicial error for the trial court to deny a jury instruction on assault with a deadly weapon.

### III. It Was Not Prejudicial Error for the Court to Fail to Give a Limiting Instruction Sua Sponte Regarding the Use of the Evidence of Appellant's Gang Membership.

■ Appellant contends the trial court should have instructed the jury sua sponte on the limited admissibility of evidence of prior gang membership. Both parties agree the decision in *People* v. *Collie* (1981) 30 Cal.3d 43 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776] is dispositive of this issue.

In *Collie*, the court held there was no general duty to give such an instruction sua sponte. In that case, the defendant complained evidence he allegedly assaulted his wife on prior occasions was sufficiently prejudicial and only minimally relevant to the prosecution for the attempted murder of his wife, the court should have had a sua sponte duty to warn the jury of the limited admissibility of that evidence. The California Supreme Court disagreed. The court explained: "Neither precedent nor policy favors a rule that would saddle the trial court with the duty either to interrupt the testimony *sua sponte* to admonish the jury whenever a witness implicates the defendant in another offense, or to review the entire record at trial's end in search of such testimony. There may be an occasional extraordinary case in which unprotested evidence of past offenses is a dominant part of the evidence against the accused, and is both highly prejudicial and minimally relevant to any legitimate purpose. In such a setting, the evidence might be so obviously important to the case that sua sponte instruction might be needed to protect the defendant from his counsel's inadvertence." (*Id.* at p. 64.)

Appellant claims this is such an extraordinary case. Evidence of gang membership was the dominant part of the prosecution's case. Every witness was questioned about his or her personal knowledge of gangs. The prosecution used the general information about gang culture for the purpose of proving both motive and intent for the murder and attempted murders. Appellant further claims the evidence on gang culture was highly prejudicial and only minimally relevant to any legitimate purpose.

We are bound to agree with appellant in certain respects. Evidence of gang membership was indeed the focal point of the case. We would also have to agree that evidence was highly prejudicial but only in the sense of being damaging to his case. However, we cannot agree the evidence was only minimally relevant to any legitimate purpose. Evidence of gang membership was critical to prove both motive (retaliation for the death of fellow gang member) and intent to kill (random killings based on hatred), and therefore was central to the case. Under the circumstances, the court had no sua sponte duty to give CALJIC No. 2.50 instructing the jury to only consider evidence of appellant's past gang membership for purposes of proving intent to kill or motive.[2]

## IV. IT WAS NOT PREJUDICIAL ERROR TO FAIL TO GIVE CALJIC NO. 1.00 IN ITS ENTIRETY.

 Appellant contends the trial court committed prejudicial error by failing to give CALJIC No. 1.00 in its entirety because it was requested by one of the parties, and because it presents general principles of law and guidance for criminal juries.[3] Appellant cites no case directly supporting this point. Appellant rather analogizes the situation to cases in which it was held appropriate on the issue of guilt for a trial court to instruct jury passion and prejudice should play no part. (See, e.g., *People* v. *Polk* (1965) 63 Cal.2d 443, 451 [47 Cal.Rptr. 1, 406 P.2d 641]; *People* v. *Tidwell* (1970) 3 Cal.3d 62, 73 [89 Cal.Rptr. 44, 473 P.2d 748].) Appellant also cites this court to cases which declare a trial court has a general duty to instruct on

[2] CALJIC No. 2.50 [Evidence of Other Crimes] provides in pertinent part as follows:

"Evidence has been introduced for the purpose of showing that the defendant committed [a crime] [crimes] other than that for which he is on trial.

"Such evidence, if believed, was not received and may not be considered by you to prove that defendant is a person of bad character or that he has a disposition to commit crimes.

"Such evidence was received and may be considered by you only for the limited purpose of determining if it tends to show:

"[The existence of the intent which is a necessary element of the crime charged;]

"[A motive for the commission of the crime charged;]

"For the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in the case.

"You are not permitted to consider such evidence for any other purpose." (CALJIC No. 2.50 (4th ed. 1979).)

[3] The omitted portion of CALJIC No. 1.00 provides: "As jurors you must not be influenced by pity for a defendant or by prejudice against him. You must not be biased against the defendant because he has been arrested for this offense, charged with a crime, or brought to trial. None of these circumstances is evidence of guilt and you must not infer or assume from any or all of them that he is more likely to be guilty than innocent.

"You must not be influenced by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling. Both the People and the defendant have a right to expect that you will conscientiously consider and weigh the evidence and apply the law of the case, and that you will reach a just verdict regardless of what the consequences of such verdict may be." (CALJIC No. 1.00 (4th ed. 1979).)

the relevant law of the case and to tailor instructions to fit the facts of the case before it. (See, e.g., *People* v. *Klor* (1948) 32 Cal.2d 658, 662 [197 P.2d 705]; *People* v. *Williams* (1957) 153 Cal.App.2d 5, 9 [314 P.2d 161]; *People* v. *Forte* (1988) 204 Cal.App.3d 1317, 1323 [251 Cal.Rptr. 855].)

Respondent argues an instruction directed to the jury relating to general principles governing all criminal cases is in essence a limiting instruction. Thus, by analogy to other limiting instructions, there is no sua sponte duty to give all of CALJIC No. 1.00. (CALJIC No. 2.50; *People* v. *Collie, supra,* 30 Cal.3d 43.)

Why the trial court failed to give the entire instruction is not made clear by the record. It could have been through mistake, neglect or inadvertence. Certainly no one is alleging the omission was intentional. However, if appellant "believed that the instruction was incomplete or needed elaboration, it was his responsibility to request an additional or clarifying instruction." (*People* v. *Bell* (1989) 49 Cal.3d 502, 550 [262 Cal.Rptr. 1, 778 P.2d 129] [defendant contended mitigating evidence of mental defect withdrawn from jury consideration where only instructed on mental disease]; *People* v. *Anderson* (1966) 64 Cal.2d 633, 639 [51 Cal.Rptr. 238, 414 P.2d 366] ["[S]ince he did not request such amplification or explanation, error cannot now be predicated upon the trial court's failure to give them on its own motion."].)

Appellant made no request for additional instructions, nor did he make an objection. Because the point was not properly raised below, appellant must be deemed to have waived the error on appeal. (*People* v. *Williams* (1968) 265 Cal.App.2d 888, 899 [71 Cal.Rptr. 773]; 6 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Reversible Error, § 3289, pp. 4068-4069.)

We recognize instructional error is reviewable even without objection if it affects a defendant's substantive rights. (Pen. Code, §§ 1259, 1469.) However, appellant was not prejudiced in this instance. The sum and substance of the omitted instruction was conveyed to the jury in the instructions given on burden of proof, reasonable doubt and presumption of innocence. (CALJIC No. 2.90 (4th ed. 1979).)[4]

---

[4] CALJIC No. 2.90 (4th ed. 1979) provides: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the State the burden of proving him guilty beyond a reasonable doubt.

"Reasonable doubt is defined as follows: It is not a mere possible doubt, because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge."

V. The Allegations of Prosecutorial Misconduct Were Either Waived or Were not Prejudicial to Appellant's Case.

■ Appellant claims the prosecutor made several inappropriate comments in closing argument which appealed to passion, prejudice and the public's fear of gangs.

In *People* v. *Haskett* (1982) 30 Cal.3d 841 [180 Cal.Rptr. 640, 640 P.2d 776], the court defined prosecutorial misconduct as " 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury. [Citation.] The ultimate question to be decided is, had the prosecution refrained from the misconduct, is it reasonably probable that a result more favorable to the defendant would have occurred.' (*People* v. *Strickland* (1974) 11 Cal.3d 946, 955 [114 Cal.Rptr. 632, 523 P.2d 672].)" (*Id.* at p. 866.)

"[W]ith two exceptions, the burden is on the defendant who claims that the prosecutor was guilty of misconduct to object and to seek a curative admonition. Hence, if he is silent or merely objects or makes the assignment of misconduct but does not request an admonition, he cannot complain on appeal. . . .' " (*People* v. *Gaulden* (1974) 36 Cal.App.3d 942, 958 [111 Cal.Rptr. 803], citing *People* v. *Asta* (1967) 251 Cal.App.2d 64, 86-87 [59 Cal.Rptr. 206]).

" ' "It is the province of a district attorney to state to a jury the various conclusions that he draws from the evidence, and to make it clear to the jury what conclusions in his opinion should be drawn from the evidence introduced, so long as he keeps within the scope of conclusions which may properly be drawn." [Citation.] "The right of counsel to discuss the merits of a case, both as to the law and facts, is very wide, and he has the right to state fully his views as to what the evidence shows, and as to the conclusions to be fairly drawn therefrom. The adverse party cannot complain if the reasoning be faulty and the deductions illogical, as such matters are ultimately for the consideration of the jury." [Citation.] In the argument before the jury, any reasonable inference may be drawn from the evidence, and it is a matter within the discretion of the trial court to determine whether counsel stays within the permissible range of discussion." [Citation.]' " (*People* v. *Gaulden*, *supra*, 36 Cal.App.3d at pp. 958-959.)

In view of the above principles, our review of the record demonstrates the instances of prosecutorial misconduct complained of in this case were either waived or did not constitute prejudicial error.

Appellant complains the following excerpts from the prosecutor's closing argument constitute misconduct because they constantly stress the fact of appellant's gang membership: "What do we have here? We have the fact, the showing, that he manifested his intention to unlawfully kill a human being. First of all, he is a Crip. We know that. That is undisputed. He is a Crip. He goes into Bloodstone Villain territory—he goes into Bloodstone territory, and he lives somewhere down on 98th in the 300 block. So he come up through Crip territory and goes into Blood territory. That is not a friendly neighborhood to him. He has got to know what he is doing. He is there to create trouble. He is there to do payback. He is there to retaliate. He has got to mean business when he goes into that neighborhood. So he goes into rival gang territory.

"Well, again, we are talking about the defendant. He is what they call an O.G. Okay. He is smarter than these young guys that need to prove themselves in the gangs. He doesn't need to. I mean that is stupid.

"So we are talking about a—we are talking about life and death. There is no in-between. There is no goofing around with gangs. They don't mess around. They go over; they want to kill."

There was no objection to these comments in the trial court. Thus, any objection on appeal must be deemed waived. (*People* v. *Green* (1980) 27 Cal.3d 1, 34 [164 Cal.Rptr. 1, 609 P.2d 468].).

Later the prosecution stated: "You have to know—if you are a Five-Nine East Coast Crip, you do not wander into a Bloodstone Villain neighborhood. They don't get along. You could get killed yourself. It is not only that you are going in there to be the offensive; but if you are going in there you are taking your life in your hands. So when you go into a neighborhood like that, you have to know what you are doing. You don't wander into that neighborhood. You don't take a wrong turn somewhere. You are not out looking at the neighborhood, checking out houses to buy." Defense counsel did object to this comment, claiming the argument was not supported by the evidence. The objection was overruled.

The comments referred to generally constitute no more than legitimate comment upon the evidence presented and what the prosecution reasonably thought the evidence proved. We find sufficient support in the record that the court properly overruled appellant's objection.

The only time defense counsel did object to the prosecutor's argument with the assignment of misconduct was on grounds the prosecutor was appealing to the passions and prejudices of the jury. This comment was not

related to evidence of gang membership but rather to the possibility the victim suffered before he died. The objection was overruled on the basis the coroner had specifically testified to the victim's circumstances. Defense counsel made no request for an admonition to the jury.

We cannot say appellant was prejudiced by this comment. It was brief and considerably less graphic than the testimony given by the coroner without objection. Further, it is unlikely, in the absence of such conduct, a result more favorable to appellant would have occurred.

VI. APPELLANT'S CONVICTION ON THE ALLEGATION OF PRIOR FELONY CONVICTIONS MUST BE REVERSED BECAUSE APPELLANT'S ADMISSION OF THOSE PRIORS WAS NOT PRECEDED BY A FULL ADVISEMENT OF HIS CONSTITUTIONAL RIGHTS.

 The California Supreme Court in *In re Yurko* (1974) 10 Cal.3d 857, 863 [112 Cal.Rptr. 513, 519 P.2d 561], held "before a court accepts an accused's admission that he has suffered prior felony convictions, [the trial court must give] express and specific admonitions as to the constitutional rights waived by an admission. The accused must be told that an admission of the truth of an allegation of prior convictions waives, as to the finding that he has indeed suffered such convictions, the same constitutional rights waived as to finding of guilt in case of a guilty plea." The three constitutional rights involved in a guilty plea are the privilege against compulsory self-incrimination, the right to a jury trial, and the right to confront one's accusers. (*Id.* at p. 863, fn. 5; *Boykin* v. *Alabama* (1969) 395 U.S. 238, 243-244 [23 L.Ed.2d 274, 279-280, 89 S.Ct. 1709].)

The trial court must additionally inform the accused of the impact the admission will have on his sentence and parole eligibility and insure any resulting admission is in fact knowingly and voluntarily made. (*In re Yurko, supra,* 10 Cal.3d 857, 864-865.)

Appellant contends he was not advised of, nor did he waive, his constitutional rights of confrontation and privilege against self-incrimination. Respondent concedes this constitutional defect and we agree.

In a bifurcated proceeding after the jury verdict, defense counsel advised the court appellant was willing to admit the truth of the prior allegation, foregoing the right to have a trial by jury or by the court. The prosecutor advised appellant he had the right to a jury trial. Appellant said he understood and had discussed this right with his attorney and chose to waive his right to a jury trial.

Certified copies of the prior judgments of conviction were admitted into evidence and the trial court stated: "Defendant has been advised of his rights to have a jury listen to the prior, waives and gives up those rights. Counsel joins, and the prior is admitted."

Advisement of the right to a jury trial does not serve to advise appellant of his right to confront witnesses or the privilege against compulsory self-incrimination. Nor is there anything else in the record indicating a voluntary and intelligent waiver of these rights. Respondent concedes, as it must, appellant's admission of the prior convictions should be set aside and the cause remanded for appropriate proceedings on the allegation.[5]

### DISPOSITION

The judgment of conviction for the attempted murders is reversed and the cause remanded to the superior court with directions to enter a judgment of guilty of two counts of assault with a deadly weapon if the prosecutor consents to forgo prosecuting appellant for attempted murder; or, in the alternative, to set the cause for retrial if the prosecutor does not so consent. The conviction on the prior offense allegation is reversed and remanded for proceedings consistent with this opinion. The judgment of conviction of second degree murder is affirmed. The case is affirmed in all other respects.[6]

Lillie, P. J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied February 8, 1991.

---

[5] Appellant also contends the trial court erred by failing to state on the record reasons for imposing consecutive sentences on the attempted murder convictions. (Pen. Code, § 1170, subd. (c); Cal. Rules of Court, rules 443, 425.) Because the cause is remanded for possible trial on the prior offense allegation and for sentencing on the two counts of assault with a deadly weapon, any alleged errors in sentencing on those convictions are rendered moot and need not be addressed here.

[6] We believe this disposition serves the ends of fairness and justice as well as of efficiency. (See, e.g., *People* v. *Riederer* (1990) 217 Cal.App.3d 829, 837 [266 Cal.Rptr. 355].) It should result in no prejudice to appellant who stands to receive a lesser conviction and the least severe punishment possible under the facts and law of this case. Nor will the prosecution be prejudiced. The People may, at their option, retry appellant on the greater charge if on remand they deem a new trial is warranted.