Filed 9/21/22  P. v. Mackey CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C094291 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE007781) |
| v. | |
| BILLY RAY MACKEY, | |
| Defendant and Appellant. | |

A jury found defendant Billy Ray Mackey guilty of two counts of attempted voluntary manslaughter (Pen. Code, §§ 192, 664; statutory section citations that follow are found in the Penal Code); two counts of assault with a firearm (§ 245, subd. (a)(2)); one count of discharging a firearm at an inhabited dwelling house (§ 246); and one count of being a felon in possession of a firearm (§ 29800, subd. (a)(1)).  The jury also found true several firearm allegations, including, as to the attempted voluntary manslaughter counts, that defendant personally used a firearm (§§ 12022.5, 12022.53, subd. (b));

1

personally discharged a firearm (§ 12022.53, subd. (c)); and personally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)). The trial court afterward sentenced defendant but, for reasons that are unclear from the record, it never accounted for the firearm findings associated with the attempted voluntary manslaughter offenses.

On appeal, defendant raises four claims. First, he contends the trial court should have instructed the jury on a lesser included offense to the crime of discharging a firearm at an inhabited dwelling house. In particular, he asserts the court should have instructed the jury on the crime of willfully discharging a firearm in a grossly negligent manner that could result in injury or death. Next, he raises two arguments concerning the firearm findings associated with the attempted voluntary manslaughter counts. Starting with the jury's findings premised on section 12022.53, he contends we should strike the jury's findings because section 12022.53 does not apply to the crime of attempted voluntary manslaughter. Turning next to the jury's findings premised on section 12022.5, he accepts that the jury's findings are valid. But because the trial court never accounted for these findings at sentencing, he asserts we should remand the case to the trial court to correct this omission. Lastly, he contends the trial court mistakenly imposed a six-year sentence, rather than a three-year sentence, for the two counts of assault with a firearm.

We agree with all but the first of defendant's claims. For this reason, we will remand to the trial court with directions to correct the sentencing errors and strike the improper jury findings associated with the attempted voluntary manslaughter offenses.

FACTS AND HISTORY OF THE PROCEEDINGS

After two men assaulted his stepson, defendant drove with his stepson to the house where the two men, J.M. and V.M., were staying. V.M. lived at the house and J.M. was visiting at the time. When J.M. opened the door, defendant said his "kid" had been "jumped" and asked for an explanation. J.M. offered one: The "kid" and one of his

2

friends "had jumped [V.M.] a couple [of] days before." V.M. came to the door shortly thereafter.

After a brief period of arguing, V.M. asked defendant whether he wanted to fight. But defendant said he "wasn't [t]here for that," pulled out a semiautomatic handgun, and started shooting. As J.M. tried to push V.M.'s sister inside the house, he was shot in the hand and stomach. He then fell and passed out. V.M. was shot too—once in each ankle and twice in the stomach. After the shooting, defendant fled.

Defendant later acknowledged these events for the most part. But in his telling, he only began shooting after seeing a gun in a man's hand inside V.M.'s house and hearing "a bang," which he thought was a gunshot. He also claimed he had no intention of shooting anyone. Although six bullets struck J.M. and V.M., defendant claimed he was not aware of where his shots were going because he was shooting "backward" while fleeing V.M.'s home and only intended to "shoot[] down at the ground."

Following the shooting, defendant was charged with two counts of attempted murder (§§ 187, subd. (a), 664); two counts of assault with a firearm (§ 245, subd. (a)(2)); one count of discharging a firearm at an inhabited dwelling house (§ 246); and one count of being a felon in possession of a firearm (§ 29800, subd. (a)(1)). The charging document also alleged various enhancements, including, as to the counts for assault with a firearm, that defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)) and, as to the counts for attempted murder and shooting at an inhabited dwelling house, that defendant personally used a firearm (§§ 12022.5, 12022.53, subd. (b)); personally discharged a firearm (§ 12022.53, subd. (c)); and personally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)).

A jury afterward found defendant not guilty of the two attempted murder charges. But as to both these charges, it found him guilty of the lesser included offense of attempted voluntary manslaughter (§§ 192, subd. (a), 664) and, for each of these offenses, found true the allegations that he personally used a firearm, personally discharged a

3

firearm, and personally discharged a firearm causing great bodily injury. The jury also found defendant guilty of the remaining four charges and found true all allegations associated with these charges.

The trial court later sentenced defendant. For discharging a firearm at an inhabited dwelling house, the court sentenced him to five years plus 25 years to life for the enhancement under section 12022.53, subdivision (d). For being a felon in possession of a firearm, the court sentenced him to an additional eight months to run consecutive. For each of the attempted voluntary manslaughter offenses, the court imposed a three-year sentence but then stayed execution of the sentence under section 654. And for each of the assault with a firearm offenses, the court imposed six years, plus three years for the great bodily injury enhancement, but then stayed execution of the sentence under section 654.

Defendant timely appealed.

DISCUSSION

I

*Lesser Included Offense*

Defendant first contends the trial court should have instructed the jury on a lesser included offense to the crime of discharging a firearm at an inhabited dwelling house. "Under California law, trial courts must instruct the jury on lesser included offenses of the charged crime if substantial evidence supports the conclusion that the defendant committed the lesser included offense and not the greater offense." (*People v. Gonzalez* (2018) 5 Cal.5th 186, 196 (*Gonzalez*).) In this case, as relevant to this claim, defendant was charged with willfully and maliciously discharging a firearm at an inhabited dwelling house in violation of section 246. The trial court instructed the jury on this charge. But according to defendant, the trial court also should have instructed the jury on the lesser included offense of willfully discharging a firearm "in a grossly

4

negligent manner which could result in the injury or death of a person" in violation of section 246.3, subdivision (a). Defendant adds that the trial court's failure to issue this instruction was prejudicial.

We reject his claim. Even assuming the trial court should have instructed the jury on the offense described in section 246.3, we find the error harmless.

Reviewing courts subject most trial court errors to harmless error review, either under the standard described in *Chapman v. California* (1967) 386 U.S. 18 or the standard described in *People v. Watson* (1956) 46 Cal.2d 818. (*Gonzalez, supra*, 5 Cal.5th at pp. 195-196; but see *id.* at p. 196 [errors that are structural in nature are not subject to harmless error analysis].) The *Chapman* standard covers errors involving "violations of the federal Constitution" and "requires reversal unless the error is harmless 'beyond a reasonable doubt.' [Citation.]" (*Gonzalez*, at pp. 195-196.) The *Watson* standard, in turn, covers errors involving violations of state law and requires reversal if "it is ' "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." ' [Citations.]" (*Gonzalez*, at p. 196.)

Although defendant attempts to invoke the *Chapman* standard, we find the more lenient *Watson* standard applies in this case. (*People v. Breverman* (1998) 19 Cal.4th 142, 165 ["the failure to instruct sua sponte on a lesser included offense in a noncapital case is, at most, an error of California law alone, and is thus subject only to state standards of reversibility"].)

Applying the *Watson* standard here, we find no prejudicial error. Had the jury been instructed of the lesser included offense described in section 246.3, it is not reasonably probable that the jury would have reached a different verdict. Defendant believes the jury might have convicted him of violating section 246.3, subdivision (a), and not section 246, had the jury been instructed on both crimes. But for that to have happened, the jury "would have had to find that defendant's shots were not aimed at or ' "in close proximity to" ' " V.M.'s house. (*People v. Bell* (2019) 7 Cal.5th 70, 109.)

5

That is because "[t]he only difference between the two crimes"—section 246 and section 246.3, subdivision(a)—"is that the [former] 'requires that an inhabited dwelling or other specified object be within the defendant's firing range.' [Citation.]" (*Id.* at p. 108.) But considering the facts of this case, it is not reasonably probable that the jury would have reached the conclusion that defendant did not shoot at the house.

The evidence that defendant violated section 246, and not merely section 246.3, subdivision (a), was overwhelming. V.M.'s sister testified that both J.M. and V.M. were near the front door of the house when defendant started shooting. J.M. and V.M. testified similarly. J.M., for instance, said he was standing in the doorway attempting to push V.M.'s sister into the house when the shooting started. And V.M., similarly, said he was leaning against the home between the front door and a pillar to the home when the shooting started. All three, moreover, testified that defendant shot both J.M. and V.M. and, according to J.M. and V.M., defendant faced them when he shot them and did so at close range. In the end, defendant shot V.M. four times (once in each ankle and twice in the stomach), shot J.M. twice (once in the hand and once in the stomach), and shot two items near the front door of the house (a patio chair and a cooler). On this evidence, which overwhelmingly shows that defendant aimed at or in close proximity to the house, it is not reasonably probable that an instruction on section 246.3 would have changed anything.

We find that true, moreover, despite defendant's arguments to the contrary. Defendant, at trial, testified he was not aware of where his shots were going because he was shooting "backward" while fleeing V.M.'s home and only intended to "shoot[] down at the ground." Considering this testimony and the jury's rejection of the attempted murder charges, defendant contends it "is probable the jury believed [him] when he testified as [to] the manner in which he fired (i.e., firing down and not at anyone or anything)." We disagree. Considering the jury's verdicts, it is plain that the jury did not credit this testimony. The jury, after all, found defendant guilty of two counts of

6

attempted voluntary manslaughter, which, among other things, required it to find that defendant intended to kill J.M. and V.M. (See *People v. Montes* (2003) 112 Cal.App.4th 1543, 1546-1547 [the crime of attempted voluntary manslaughter requires an intent to kill].) Had the jury accepted defendant's claim that he only intended to shoot the ground, as defendant claims "is probable," it could not have reached these verdicts.

Defendant also claims we should find prejudice because the jury "deliberated approximately seven hours," asked for a readback of his testimony, and asked about the effect of a hung jury (namely, whether a hung jury on one or two counts causes a mistrial on all counts); the timing of intent (namely, whether "intent ha[s] to start bef[o]re arrival on scene" or "can . . . start when the defendant first pulls or reaches for the firearm"); and the application of imperfect self-defense to the assault charges. We disagree. The trial lasted about four days, included 21 separate witnesses, over 60 exhibits, six charged counts, and various enhancements on several of these counts. Considering all this, we take little from the jury's deliberating for about seven hours. (See *People v. Mateo* (2016) 243 Cal.App.4th 1063, 1075 ["The length of deliberations established no more than that the jury took its time to reach a verdict in a case with significant ramifications"].) The same goes for the limited request for readback. As another court has explained, a jury's limited request for readback tends to evidence that "[t]he jury approached its task with care," not that the case was necessarily close. (*Ibid.*) Lastly, although the jury asked several questions, none of these questions had any clear connection to the charge based on section 246. Nor do these questions tend to demonstrate that it is reasonably probable that the jury would have reached a different verdict had it been instructed on section 246.3.

Under these circumstances, we find the jury's deliberations, request for readback, and questions offer defendant little, if any, support in this case. And although some courts, as defendant's cited cases show, have found these types of considerations can be relevant in evaluating prejudice, we find these cases are all readily distinguishable and

7

tend to have far more extreme facts. (See *People v. Diaz* (2014) 227 Cal.App.4th 362, 383-385 [finding improper admission of evidence prejudicial when the evidence was "extremely" inflammatory, the prosecutor referred to it repeatedly in closing, the jury's questions indicated it focused on this evidence, "the record unequivocally indicate[d] that the jury viewed this as a close case," and "the previous trial resulted in a hung jury on the murder charge"]; *People v. Woods* (1991) 226 Cal.App.3d 1037, 1050-1052 [finding failure to instruct on lesser included offense prejudicial when "[a] reasonable juror weighing the facts in this case could have found appellant guilty" of the lesser included offense and when the jury's deliberations, which took three days and involved readback of multiple witnesses' testimony, evidenced "an element of uncertainty"]; *People v. Woodard* (1979) 23 Cal.3d 329, 341 [finding six hours of deliberations significant when the "central issue" in the trial was only the identity of a robber]; *People v. Pearch* (1991) 229 Cal.App.3d 1282, 1293-1295 [finding admission of hearsay evidence prejudicial when the hearsay evidence was a "key piece of evidence supporting" the prosecution's theory, the prosecution focused on this evidence during witness questioning and in closing, the evidence contradicting the prosecution was "considerable," and the jury asked "numerous questions" and asked for readback for five witnesses' testimony].)

II

*Firearms Findings*

Defendant next raises two arguments concerning the jury's findings that he used a firearm (§§ 12022.5, 12022.53, subd. (b)); discharged a firearm (§ 12022.53, subd. (c)); and discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)) when he committed the two attempted voluntary manslaughter offenses.

He starts with the firearm allegations premised on section 12022.53. He contends the jury's true findings for these allegations should be stricken because the statute is inapplicable. We agree. Section 12022.53, by its terms, applies only to certain specified

8

felonies. (§ 12022.53, subd. (a).) Because attempted voluntary manslaughter is not one of those listed felonies, the statute is inapplicable to the two attempted voluntary manslaughter counts. (See *People v. Fialho* (2014) 229 Cal.App.4th 1389, 1395 [§ 12022.53 does not apply to the crime of attempted voluntary manslaughter].)

Defendant turns next to the firearm allegations premised on section 12022.5. Although the jury found these allegations to be true, the trial court never accounted for these enhancement findings at sentencing. Because it did not, defendant contends the trial court should be directed to impose and then stay punishment for these enhancements on remand. We agree. Because the trial court stayed execution of sentence for the attempted voluntary manslaughter counts, it also should have imposed and then stayed execution of sentence for the associated enhancements under section 12022.5. But, perhaps because of an oversight, the court never accounted for these enhancements in its sentence. We will direct the trial court to address this issue on remand.

III

*Sentencing for the Assaults with a Firearm*

Lastly, defendant contends the trial court imposed an excessive sentence for his two convictions for assault with a firearm—an issue the Attorney General initially raised and defendant later adopted in his reply brief. We agree. For each of these counts, the trial court imposed and then stayed a term of six years, which it deemed to be the middle term for the crime. But the middle term for assault with a firearm is three years, not six. (§ 245, subd. (a)(2).) In using a different figure, the trial court appears to have treated each of defendant's convictions for assault with a firearm under section 245, subdivision (a)(2) as an assault with a semiautomatic firearm under section 245, subdivision (b). We will direct the trial court to correct this error on remand.

9

The jury findings for the section 12022.53 allegations on the attempted voluntary manslaughter counts (counts 1 and 2) are stricken. The matter is remanded to the trial court for resentencing with directions to (1) impose and then stay execution of sentence for the section 12022.5 enhancements on the attempted voluntary manslaughter counts (counts 1 and 2) and (2) correct the excessive sentence on the assault with a firearm counts (counts 3 and 4). After preparing an amended abstract of judgment reflecting these changes, the trial court must forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

_____

HULL, Acting P. J.

We concur:

_____

DUARTE, J.

_____

HOCH, J.